We're going to start our argued cases today with 23-7976, Ashley Newbury v. City of Niagara Falls. Good morning. May it please the Court, Harvey Sanders representing the plaintiff, Dr. Ashley Newbury. There are two claims under Title VII and the New York Human Rights Law for hostile work environment, discrimination with respect to the termination of her employment, and retaliation. We contend there are eight errors below, and I'll discuss some of the allegations as I get through them. So first, with respect to the hostile work environment claim, the District Court held that the relationship between harsh conduct and gender was unclear, and this Court has held that if there's a question between whether or not conduct is sexual harassment or whether it's warish or inappropriate, the summary judgment should be denied, that it's a fact question, and the Court should have done so here. With respect to liability for supervisors, the Court below found that the allegations with respect to Chief Del Porto were insufficient, and the District Court did so kind of in a But we contend that the allegations regarding Chief Del Porto should rise to the level. In a meeting on May 19th, he subjected her to profanity, and he told her that she was a piece of ass. He said that he didn't want her to be out in the field because he didn't want his boys to be hurt on the street, ignoring the fact that there are, of course, female officers. Can I just – you said something, and I'm slowly catching up. When you say a piece of shit – Okay. Sorry. I thought you said something else which was different from what I thought was in the record. No. It sounded similar. Piece of shit. Sorry, Your Honor. No, thank you. I try to avoid that if I can, but – No, I appreciate that for decorum. I'm sorry to ask you to do that. No, no, no problem. I just thought of – yeah. So we contend that – You've isolated for Del Porto that meeting. I forget the date, but soon before the termination. One weekend. And so I think we have to ask – because that single meeting, one couldn't conclude as pervasive conduct, so the question is whether the level of severity is enough alone. Is that the right way to think about it? Is the level of severity of those comments in that single meeting sufficiently severe? I think that's right, Your Honor. And I think that the Howdy case and the Banks case, I mean, single incidents can be sufficiently severe. And I think that in this instance, it could be. And of course, we're not just relying on the Del Porto incident on the hostile work environment claim, right? So that's the one. Then we have the Grapes incident. And there the court held that Grapes was not her employer, not her supervisor. But again, in the chain of command of director – I mean, the academy is co-sponsored. The chain of command director, instructor, guest instructor, president, recruit. He's clearly in the chain of command. He has influence over the success or failure of her time in the academy. Is there anything in the record that shows that he's involved in the kinds of things that Vance – the Vance case tells us to look at? Hiring, firing, discipline? Well, I mean, he wrote a report – reports regarding her performance in the academy that the chief relied on in making the decision to terminate her claim. Right. So the chief – the superintendent relies on her. Yeah. And I think there's where we have kind of the – what's commonly known as the cat's paw kind of theory there. Even if the chief was not – his decision-making was not based on gender, which we contend it was. But even if it wasn't, if he was influenced by actors who were – and in this case, we contend Grapes and the other instructors and the recruits were. And that conduct of the – I don't understand a cat's paw hostile work environment. No, so the – yeah, the cat's paw really goes more to the termination. Right. Yeah, yeah. No, understood, Your Honor. I thought we were talking about hostile work. I was trying to, and I apologize if I seem to conflate the two. With respect to the nonsupervised conduct – Well, we're taking – like, well, you're interrupted anyway. Let me just clarify one thing that kind of puzzled me. I understand that this academy is kind of a joint enterprise between these two different entities. Does it have an existence in its own right? Like, would it have been possible to sue the academy? Or would that – is that a nonsensical – Well, I think – I guess it's not the employer. Yeah, exactly. And it is clearly a cosponsored entity between the city and the county. Does it have a status as, like, an entity? An accommodation? Like, is there some way to get at the academy directly? I don't know the answer to that, Your Honor. Okay. There are recruits trained there from other than the city and the county sheriff's office. That is correct. So other recruits from surrounding towns and counties can also participate there. In this instance, there were 14 recruits. She was the only female in the class. So if you had a recruit that was from some town that was not either of the sponsoring entities and they had a – let's say they had a similar claim, who would they sue? And what would – Well, I think they would sue their employer, whatever town or county that they're employed by, because they're putting them at this academy and employers can be responsible for harassment by non-employers. Okay. So that does suggest there's not really a separate entity. Everybody's just sort of in charge of their own people.  All right. Thank you. So I think with respect to Kennedy, the class president, and the question there is whether or not there is sufficient notice to the employer, right? The district court applied a standard of negligence saying that it was that they knew and did nothing. I don't think that's the standard. I think the standard is whether they knew or should have known. And we contend here that the complaint to Kennedy was sufficient. Again, he's clearly in the chain of command. The chief agreed that he was in the chain of command. The chief agreed that she should have complained to Kennedy. When she complained to Kennedy, she said, I'm making a complaint to you because I believe I'm obligated to do so. And she expected that he would act accordingly. Do you think that this question is a factual question? Or is it a legal conclusion? Well, I think it's a factual question. And I think the district court made a legal conclusion that it couldn't be because she didn't follow the city's policy. And that was a reason why she failed to avail herself of the policy. But I think the court below did not consider the fact that she could have availed herself of an avenue and that she did so consistent with the rules and regulations of the academy. On the termination claim, I think I covered that already briefly. On the retaliation claim, the employer awareness is really the sole reason that the district court denied that claim. And I didn't get into the sexual harassment itself. And of course, the district court clearly found that there was a hostile work environment alleged, but just that there wasn't insufficient grounds to attach liability. On the retaliation claim, it's a similar standard and general corporate knowledge or agency would be sufficient. And again, we would contend that Kennedy, by being designated the class president in the chain of command, that that would be sufficient to make him an agent of the city for those purposes. But it's true that Kennedy didn't work for the city, right? It's true. No, he did not work for the city, but the city can still have an agent who's a non-employee agent. And by being designated as class president, I'm out of time, sir. If you want to finish it. Yeah, just the last thing I was going to say is on overcoming legitimate non-exclamatory reason, the district court ignored the temporal proximity, which is a basis for addressing that. Thank you. Thank you. Mr. Wilk. Good morning. May it please the court. If I could just go right to some of the questions that were addressed about hostile work environment. Your Honor, to the extent that Ms. Newberry is relying on a single interaction with Superintendent Del Porto, the case law is clear that a single interaction has to be extraordinarily severe to meet the severe prong of the hostile work environment standard. This being the case, this particular meeting simply does not do that? Is there a basis to consider the other alleged hostile work environment conduct of the co-recruits and instructors in understanding or thinking about the severity of the meeting with Del Porto? No, Your Honor, because there's no evidence that Superintendent Del Porto had any knowledge of that whatsoever. He was clear about that in his deposition testimony as was Detective Flasso, the only other person in the room during that meeting. Mr. Kennedy testified that he never made any city employee aware of that, as did the plaintiff. Ms. Newberry confirmed that she never made any city employee aware of that. So there's no basis in the record that... I was thinking about, I think, right, this is where Del Porto says, I'm not going to let you put my boys at risk. And I was wondering whether the alleged conduct of the other recruits during training and the like is relevant to a potential jury interpretation as to whether or not that is, I guess, at least gender-based, maybe you would say yes, but not to the level, understanding the level of severity of the conduct. Still, Your Honor, even if we were to say that perhaps the other alleged conduct from recruits influenced that remark, it still doesn't reach the necessary level of extraordinary severity to constitute a hostile environment from one interaction. And in Ms. Newberry's reply brief, she referenced the Banks case from this court. And the circumstances there were very different, especially in the sense that in that case, the single interaction resulted in loud berating that was heard 50 feet away that raised people's concerns that there was a physical threat being made to the plaintiff in that case. And the critical distinction there is that that conduct being heard by the plaintiff's subordinates affected her ability, it undermined her ability to perform her job after that interaction took place. Here, this was a private meeting attended only by Superintendent Del Porto, the plaintiff, and Detective Flasso, and there's no allegation that the conduct was physically threatening or in any way could have undermined her ability to perform her job necessary to meet that test for severity for a single-instance hostile work environment. Is it relevant whether the interaction took place in the ordinary course of her employment versus in the context of a conversation in which her employment is being terminated? I don't... Your Honor, I don't see a distinction there. I mean, this was, I would say, certainly in the normal course of her employment that she would have a review with her supervisors after such significant concerns about her performance had been raised and the time was coming when the department would have to make its determination as to whether it would promote her to become a police officer. So, certainly, this kind of meeting is in the normal course of the job for a police officer. And if I may, still on the hostile work environment claim, the extent to which there's a basis to impute liability for any of the alleged conduct. As Your Honor mentioned, Mr. Kennedy was not an employee of the city. The city did not control the process through which he was made the class president. The class president's duties, such as they are, as exist in the rules and regulations for the Academy, which is the document that Ms. Newberry relies on for the notion that there's a chain of command, those duties are defined as holding meetings, appointing committee members as necessary, and serving as the official representative of the class. None of that entails a responsibility to field confidential, sensitive personnel issues from other recruits who are employed by different agencies. There's a memo, I don't know if it's a separate document from the one you're talking about, the memo that seems to require, or not require, suggest that recruits should bring complaints to Kennedy and that Kennedy will report Is that ringing a bell? I have on my notes February 10, 2016 memo. I'm sorry, Your Honor, I'm not aware of a memo that says that. I'll find it. Okay, thank you. And the Mr. Kennedy's Sorry, I'll wait for you. Mr. Kennedy's testimony was that he did not consider himself to be in the chain of command. His responsibilities as class president were minimal. He said that it basically meant that he got yelled at first, that he kept a set of keys and was responsible for letting people into the facility in the morning and would give a speech at the end of the academy. The single line about there being a chain of command is simply not a duty that's placed on Mr. Kennedy to report things of this nature that are heard in the course of the academy. I was looking at referring to Appendix 77 February 10, 2016 memo It's from FASO to Del Porto after a conversation with Ms. Newberry and at the end it says, in addition, we told her that if she needed anything to advise her class president, who in turn will let the co-directors know. Thank you, Your Honor. Yes, this I would say is in the context of Ms. Newberry here was really struggling with the course. She was feeling overwhelmed by all the training exercises and the things that they were going through. And so that is something that I think she was encouraged to talk to the president about because she was having difficulty with the curriculum. That's distinct from a personnel matter. An allegation of harassment has to do with her employment for which the city created an avenue, a policy and a form for reporting within its normal structure for all employees. One more point on this issue, Your Honors, is that the standard is whether the city should have known about these reports these alleged reports to Mr. Kennedy. That's akin to a negligent standard. That's as if saying the city had a duty to check with this individual who was not one of their employees to find out whether any reports of conduct like this had ever been made. Your Honors, quickly in the last couple minutes I'll transition to Let me just poke that point a little bit. Are you saying it's not the law that you knew or should have known is the framework we apply in assessing the employer's knowledge of things? Oh no, I didn't mean to imply that, Your Honor. The standard is whether the employer knew or should have known. And my argument is that they should not have known. There's no which is akin to a negligent standard and they did not with any reasonable care would not, should not have known. Okay, you're not warring with the standard. You're saying that given that standard there's no reasonable jury to conclude that it's satisfied here. That's correct, Your Honor. Finally, I'll just touch on a couple points that were made on the retaliation claim. There was no knowledge of the protected activity that the corporate knowledge doctrine pertains to agents of the city, which Mr. Kennedy was not. Finally, that claim requires a but-for causation standard so even if the plaintiff could establish that she engaged in protected activity that the city had knowledge of for the reasons that we've cited in our brief related to the discrimination claim the plaintiff would certainly not be able to establish that her termination would not have happened but for sex discrimination. Thank you, Your Honors. Thank you very much. Mr. Sanders. Sure, just briefly to touch on a couple of questions that you asked, Mr. Wiltenberg. With respect to the meeting with Superintendent Del Porto it's important to note that Faso was there because Faso is a City of Niagara Falls employee and he's the co-director of the Academy and therefore would know more about what was going on in the Academy and the comment by Del Porto that was heard by Faso kind of gave Faso marching orders. There's profanity, there's yelling, maybe not yelling 50 feet away. Wasn't this at the, I guess that's what's puzzling wasn't this sort of as she's going out the door? Well, it's a week before she's going out the door but it's noteworthy that she's the only recruit in the history of the Academy to complete all of the requirements of the Academy. She passed the Academy but yet they refused to let her graduate or to appoint her. She's the only recruit in this so she had some struggles earlier on, no question about that, but by the end she had passed all of the requirements of the Academy and she performed more favorably better than many of the other recruits in various different areas of the Academy. Was the City supposed to just forget about the problems she had early on which included shooting one of the other recruits, right? Well, it's an Academy alert, right? But you can't just pretend they didn't happen. I'm not suggesting that they pretend it didn't happen but ultimately she did pass all of the requirements including that particular requirement. I mean, you know, some football coach recently said you learn more from mistakes than you learn from successes, right? That's the purpose of the Academy is to learn so that way when you're out there on the street you're not making similar mistakes. Your Honor... What does it mean to pass, I guess, for purposes... Her employment wasn't you get this job as long as you pass no matter how much no matter what problems are identified in the course of that or is it your position that if she formally completes the identified benchmarks of the training that she's in? Well, I would say this. You're hired by the city. Hired by the city as a recruit. You're an employee of the city. At that point you need to go to the Academy and pass the Academy in order to be out on the street as an officer. So you get sent to the Academy you've got to pass the Academy and if you don't pass the Academy, interestingly other recruits who failed the Academy in the past have been allowed to repeat the Academy. I mean, she didn't fail the Academy so there'd be no reason for her to repeat the Academy but they terminated her employment and said not only are we terminating your employment but we're not going to let you graduate even though you met all of the requirements of the Academy. So it's you need to pass the Academy in order to be out on the street but it didn't necessarily mean that failing the Academy would have met the termination of her employment. It's a weird I mean, I almost feel like the problem here is with the Academy's definition of what it means to pass the Academy. If you can pass the Academy when the supervisors, the people who are running the Academy are left with a distinct concern that you're not safe on the street with your fellow officers, I guess it's just odd to me that that it still makes sense to say she passed the Academy. I understand that there's no course she failed but But I mean, it's very it's very objective, right? There's different criteria for each of the elements in the course of the Academy and FASA, who's a city employee and co-director of the Academy admitted that she met all of the requirements to pass the Academy. She did everything she needed to do to pass. So while there were reservations, he acknowledged that she met the requirements to pass the Academy. Those were based on test taking? Test taking, but test taking including performance of their, I mean, so there's paper and pencil tests but there's also all kinds of field tests and she passed all of those tests and maybe there was some remediation before she passed, but in the end of the day she passed every requirement just as every other recruit in that class. Thank you, Your Honor. Thank you very much. Appreciate both of it both of your arguments and we will take it under advisement.